### TEXAS CO. v. NATIONAL LABOR RELATIONS BOARD.

#### No. 10237.

Circuit Court of Appeals, Ninth Circuit.

April 29, 1943.

Rehearing Denied May 24, 1943.

Albert E. Van Dusen, of New York City, and J. A. McNair, of Los Angeles, Cal., for petitioner.

Robert B. Watts, Gen. Coun., N.L.R.B., Ernest A. Gross, Asso. Gen. Coun., Howard Lichtenstein, Asst. Gen. Coun., and David Findling, Malcolm A. Hoffmann and L. N. D. Wells, Attorneys, N.L.R.B., all of Washington, D. C., for respondent.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

DENMAN, Circuit Judge.

Petitioner, steamship owner and operator, seeking to have set aside an order of the National Labor Relations Board based upon findings of unfair labor practices in the discharges of one Rosen from two of its vessels. The Board cross-petitions for the enforcement of its order.

A Board order based on Rosen's two discharges was before us in petitioner's former petition, and considered in our opinion in Texas Company v. N. L. R. B., 9 Cir., 120 F.2d 186. In that case we held the Board had failed to consider certain provisions of the maritime law for the protection of safety of life at sea in holding

one Buckless, an habitually drunken boat-swain, improperly had been discharged. We set aside the Board's order so far as it was based on its treatment of Buckless' conduct.

With regard to Rosen's discharges we returned the case to the Board for further consideration, having in view the disregarded maritime safety legislation. The petitioner had there urged that there was no substantial evidence from which the Board could infer that the discharges constituted unfair labor practices and, therefore, that we should set aside the Board's order on that ground. Obviously, we would have taken that action had there been no such evidence.

On the return of the case to the Board it set aside its order based on Rosen's discharges. The case was reargued before the Board on the same record as considered in our first hearing here. The Board's reconsideration was in compliance with the requirement of our first opinion with reference to the safety laws. The Board made an order based on Rosen's discharges similar to that considered on the first hearing here.

There is evidence that the National Maritime Union of America, hereafter called the Union, was formed in May, 1937, by dissident (also known as "rank and file") members of the International Seamen's Union. The following month J. Gordon Rosen and James Blasingame, both of whom were members of the newly formed organization, shipped as able-bodied seaman and quartermaster, respectively, on petitioner's vessel, the California. When Rosen reported for duty to one Baldwin, acting chief mate of the ship, Baldwin admonished him, "There is one thing * * * we don't allow on this ship, and that is getting drunk, missing watches, and we don't allow any agitation with the crew on this union business." At about the same time Baldwin likewise warned Blasingame that "There are a few things we don't stand for on here. That is, getting drunk, missing watches and agitating Union to the crew back there. * * * the minute you start out you are finished." Rosen testified that several other members of the crew told Rosen that they had also received similar threats and warnings from Baldwin at this time.

In July, 1937, Baldwin, who was then second mate, and in charge of the midnight to 4 a. m. sea watch to which Blasingame was also detailed, frequently engaged him in conversation during their watches. In these conversations Baldwin told Blasingame "how they had been running [the ship] without having any union men aboard" and that he had had to "get rid" of one of the crew "because he was agitating unions all the time." Baldwin also questioned Blasingame as to his union affiliation and that of other members of the crew, including Rosen, and declared, with reference to one newly hired employee, that he would not be "on this ship very long" if he belonged to the Union. On another occasion, upon observing a newly shipped fireman come aboard wearing a Union button, Baldwin remarked, "There is a man who won't ride this ship very long." When Rosen was being paid off at the conclusion of the voyage, Baldwin explained to him, "Well, you know we don't want any agitating back there," referring to crew's quarters. Blasingame testified that he also was told by Chief Mate David Rosen at the same time, "You can't ride this ship any more. Go ride one of your rank and file ships."

This evidence is sufficient to warrant the Board's findings of interference, restraint and coercion. There is also evidence that Rosen was discharged from two of petitioner's vessels because of his union activities. It is strongly controverted, but it is the Board's function, and not that of this court, to resolve this conflict. The Board was within its powers in concluding that these discharges were pursuant to the anti-union attitude of petitioner as shown from the testimony concerning Baldwin's statements. The order for Rosen's reinstatement with back pay is warranted. Since two vessels and their officers are involved, it is no abuse of the Board's discretion in ordering the usual notices posted in several places accessible to petitioner's employees.

The petition to set aside the Board's order is denied. The petition for our decree enforcing the order is granted.